IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| JAMES MELTON, | : | |
| | : | Civil No. 09-6353 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Respondent. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of James Melton ("Petitioner") under 28 U.S.C. § 2255 to set aside, correct, or vacate his sentence. Petitioner, a federal inmate proceeding *pro se*, seeks relief based on numerous claims of ineffective assistance of counsel. For the reasons stated herein, the Court will deny Petitioner's motion.

**I.    BACKGROUND**

On October 25, 2001, Petitioner was convicted of conspiracy to distribute and possess with intent to distribute cocaine and "crack" cocaine in addition to other related charges. *United States v. Melton*, No. 00-384 (RBK), Doc. No. 159.[1]  He was subsequently sentenced to a prison term of 480 months. (Doc. No. 220.)

---

[1] All subsequent references to CM/ECF Document Numbers as ("Doc. No.") will refer to entries in Petitioner's underlying criminal case, No. 00-384. References to entries in Petitioner's civil case, No. 09-6353, will be identified as follows: ("Civil Doc. No.").

Petitioner appealed his conviction and his sentence. (Doc. No. 221.) The Third Circuit affirmed his conviction but remanded the case for sentencing in light of the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Melton*, 131 F. App'x 21 (3d Cir. 2005). The Court heard argument on the re-sentencing on October 20, 2005. (Doc. No. 266.) At the conclusion of that argument, the Court again sentenced Petitioner to a 480-month term of imprisonment. Petitioner appealed the resentencing, and this time the Third Circuit affirmed. *United States v. Melton*, 215 F. App'x 108 (3d Cir. 2007). Petitioner filed a petition for a writ of certiorari in his case to the United States Supreme Court on April 16, 2007. The Court denied the petition on May 21, 2007. Then, on December 17, 2009, Petition filed the instant motion.[2] (Civil Doc. No. 1 ("Pet'r's Mot.").)

On April 12, 2010, the Court issued an order directing Respondent to respond to Petitioner's motion within forty-five days. (Civil Doc. No. 3.) The Court then granted several of Respondent's motions for extension of time, (Civil Doc. Nos. 4, 5, 7, 8), after which Respondent filed its opposition to Petitioner's motion on November 4, 2011. (Civil Doc. No. 9.) Petitioner was also granted several extensions in order to file his reply to Respondent's opposition. (Civil Doc. Nos. 12, 14.) Although Petitioner avers that he submitted his reply to prison authorities for mailing on May 31, 2012, it was not filed on the docket. Petitioner then filed a "motion to

---

[2] Respondent points out in its opposition that Petitioner's motion was filed almost eighteen months after the applicable statute of limitations had lapsed. (Civil Doc. No. 9 (Resp't's Opp'n Br. 4-5).) Petitioner admits that his motion is untimely, but asks the Court to apply the doctrine of equitable tolling to preserve his claim. (Civil Doc. No. 2 (Pet. Mot. for Equitable Tolling).) Respondent counters that Petitioner has failed to satisfy the requirements for equitable tolling because no "extraordinary circumstances" exist to justify Petitioner's failure to file a timely section 2255 motion, and because he did not exercise "due diligence" in preserving his rights. (Resp't's Opp'n Br. 7-8.)

In this case, Petitioner explains that, despite his best efforts to contact his attorney by telephone to inquire about the status of his petition for a writ of certiorari (the denial of which served to trigger the applicable one-year statute of limitations), various circumstances prevented their speaking about this issue until December 17, 2008. The Court, in an effort to give Petitioner the benefit of every conceivable doubt, will consider the one-year filing period to have been tolled until the date of that phone call. Thus, because Petitioner filed the instant motion exactly 365 days later, the Court will consider him to have made a timely section 2255 motion.

correct the status of his pending motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, and a motion to file his reply to Respondent's opposition. (Civil Doc. No. 15.)

On August 28, 2013, it having appeared to the Court that Grounds Four and Five of Petitioner's section 2255 motion were not raised directly on appellate review, the Court issued an Order to Show Cause directing Petitioner to show why the claims for relief set forth in Grounds Four and Five should not be dismissed as procedurally defaulted. (Civil Doc. No. 17.) On October 3, 2013, Petitioner responded to the Court's Order and formally withdrew those. (Civil Doc. No. 18 (Pet'r's Resp. to Order to Show Cause 1, 3).)

## II. DISCUSSION

28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the validity of his sentence. *Accord Morelli v. United States*, 285 F. Supp. 2d 454, 458 (D.N.J. 2003). The prisoner has the right to be released if his sentence was imposed in violation of the Constitution. *See* 28 U.S.C. § 2255. Such relief is available only if the petitioner can establish "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Deluca*, 889 F.2d 503, 506 (3d Cir. 1989).

Petitioner here argues that his Sixth Amendment right to effective assistance of counsel was violated. To establish such a violation, a person must establish two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

3

*Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As to the first prong of the *Strickland* test, the burden is on the movant to show that his counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *United States v. Saunders*, 165 F.3d 248, 250 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). In this context, scrutiny of counsel's conduct must be "highly deferential." *Strickland*, 466 U.S. at 689. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Accordingly, analysis of this first prong must proceed with the "strong presumption" that the conduct in question fell within "the wide range of reasonable professional assistance," leaving it to the movant to overcome that presumption. *Id.*

If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

With regard to *Strickland*'s second prong, prejudice to the defendant will arise only if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.*

As a practical matter, a court deciding an ineffective assistance of counsel claim may begin (and potentially end) its analysis with either the first or second prongs set forth in *Strickland*. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

## III. ANALYSIS

Petitioner's motion originally asserted claims arising under the Fourth, Fifth, and Sixth Amendments. In his response to Respondent's opposition, however, he abandoned his Fourth and Fifth Amendment claims regarding the admissibility of recorded telephone conversations. (Civil Doc. No. 16 (Pet'r's Resp. to Opp'n 2 n.2).) Further, in response to the Court's August 28 Order to Show Cause, Petitioner officially withdrew his Fifth Amendment claims set forth in Grounds Four and Five of his section 2255 motion. (Pet'r's Resp. to Order to Show Cause 1, 3.) Accordingly, all that remains are Petitioner's Sixth Amendment claims that he was denied the effective assistance of counsel both at his trial and during his appeal. The Court now turns to these claims.

### A. Ineffective Assistance of Trial Counsel

Petitioner's motion lists eighteen "supporting facts" which he claims demonstrate the ineffective assistance of his counsel. The Court will address each of these facts in turn.

> i. *"Trial counsel failed to investigate and/or listen to government audiotapes of wiretap recordings, thereby failing to properly object to their authentication and admission or to use them in their entirety for defendant's benefit once admitted"*

Respondent offers persuasive evidence disputing the accuracy of this assertion. First, trial counsel avers that after receiving discovery in the case, he "listened to the audio recordings of the wiretap calls that were pertinent to the Government's case against [Petitioner]." (Resp't's Opp'n, Ex. A (Decl. of Joshua Markowitz ¶ 8a ("Markowitz Decl.")).) He also listened

"numerous times" to the audio recordings of the wiretap calls the Government intended to use at trial and reviewed transcripts of them with Petitioner for further clarification. (*Id.*)

The Court has no reason not to accept this declaration at face value. Petitioner offers nothing more than his speculation that counsel did not listen to wiretapped calls. (*E.g.*, Pet'r's Resp. to Opp'n, Decl. ¶ 13 ("At the outset when Attorney Markowitz talked to me about his defense strategy, it was clear to me that he did not independently evaluate the audio recordings.").) Instead, it appears that Petitioner, after his conviction, listened to a number of tape recorded conversations that were provided to a codefendant of his, came to the conclusion after listening to them that they reveal some inconsistencies of the evidence offered at trial, and then infers that his attorney, because he did not pursue a trial strategy that highlighted those inconsistencies, must not have listened to them. Without anything more than this apparent speculation, however, there is no indication that counsel's conduct in listening to the audio tapes that were pertinent to the Government's case against Petitioner fell below any "objective standard of reasonableness under prevailing professional norms." *See Saunders*, 165 F.3d at 250. Thus, Petitioner has failed to establish the first prong of *Strickland*. His section 2255 motion cannot therefore proceed on this basis.

> ii. *"Trial counsel failed to seek a* Franks *hearing to challenge the wiretap warrant affidavit and the government's necessity for obtaining the wiretap"*

Trial counsel did file a motion to suppress the wiretap evidence. (*See* Doc. No. 144 (Notice of Motion to Suppress).) The Court heard oral argument on the motion on October 15, 2001. (Doc. No. 147.) At that proceeding, the Court, after hearing counsel on the matter, found that the information provided by the government in its affidavit was "more than sufficient to demonstrate the need for a wiretap under the applicable case law." (Resp't's Opp'n, Ex. E (Trial Transcript).) Thus, although counsel did not seek a so-called *Franks* hearing to challenge the

probable cause contained in the wiretap affidavit, it is clear from the Court's ruling on the motion to suppress that such a hearing would have been futile. Thus, Petitioner cannot show any prejudice resulting from counsel's decision not to challenge the wiretap warrant affidavit through a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). As such he has failed to establish the second prong of the *Strickland* test, and thus his motion cannot succeed on this basis.

      iii.      *"Trial counsel failed to contest the drug quantity attributable to defendant and the co-conspirators, or to properly account for the drug quantity at sentencing"*

Counsel avers that he did in fact contest the drug quantity attributable to Petitioner at trial, at sentencing, and at re-sentencing. (Markowitz Decl. ¶ 8c.) Indeed, the record shows that counsel, in his closing statement, emphasized his interpretation that the evidence presented at trial did not prove that Petitioner ever actually handled or possessed any cocaine or crack cocaine. (*See* Resp't's Opp'n, Ex. F.) Further, at sentencing and at resentencing, it is clear that counsel objected to certain paragraphs of the Presentence Investigation Report. (*Id.*, Ex. G.) Specifically, counsel argued that the drug quantities that would form the basis for Petitioner's sentence calculation were "based on speculation of witnesses at trial." (*Id.*) The Court rejected this argument out of hand, finding the evidence to support the amounts listed in the PSR to be "overwhelming." (*Id.*) Similar arguments were presented to the Third Circuit on appeal and were rejected. *United States v. Melton*, 215 F. App'x 108, 112 (3d Cir. 2007). Thus, it is clear that counsel is not guilty of the failure to act which Petitioner accuses him of.

Instead, Petitioner really argues that his attorney should have used the sentencing proceedings to play certain tape recorded conversations that highlighted inconsistencies in certain witnesses' testimony at trial. (Pet'r's Resp. to Opp'n 32.) If he had done so, Petitioner continues, the sentencing court might have disbelieved testimony concerning the quantity of cocaine and crack cocaine that were involved in the conspiracy. The Court rejects this argument.

7

First, mere disagreements with counsel's strategic choices on how to achieve a certain end are not generally proper grounds for asserting an ineffective assistance of counsel claim. *See Strickland*, 466 at 690-91. Second, given that the first sentencing court found the evidence of the drug quantities under which Petitioner was sentenced to be "overwhelming," there is absolutely no basis to conclude that there was a "reasonable probability that, had counsel taken Petitioner's urged course of action, "the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Thus, Petitioner's argument provides no basis for granting his section 2255 motion.

> iv. *"Trial counsel failed to object or otherwise challenge the prosecutor's impermissible vouching for government witnesses at closing"*

Respondent avers in its opposition to Petitioner's motion that its review of the closing arguments given by Assistant United States Attorneys Lee Vilker and William E. Fitzpatrick contain no evidence of any "vouching" for government witnesses. (Resp't's Opp'n Br. 17-18.) Petitioner's motion does not specify what statements he believes constituted impermissible vouching, nor does his response brief refer to the issue at all. The Court therefore concludes that Petitioner's ineffective assistance of counsel claim cannot be sustained on this basis.

> v. *"Trial counsel failed to obtain* Jencks *material,* i.e.*, the grand jury testimony of various government witnesses"*

Counsel avers that, despite Petitioner's claims to the contrary, he "reviewed Jencks material from the Government in advance of trial." (Markowitz Decl. ¶ 8d.) He then goes on to list the evidence provided to him by the Government pursuant to its disclosure obligations under the Jencks Act, 18 U.S.C. § 3500.

Further, Respondent contends, and there is no indication to the contrary, that none of the witnesses used by the government during trial ever testified before the grand jury in this case.

(Resp't's Opp'n Br. 19; *see also id.*, Ex. J (counsel's statement during pretrial proceedings noting that "there is no Grand Jury testimony" in the case).)

Because Petitioner offers no specifics to contest this declaration, the Court finds he has not demonstrated that his counsel's conduct "fell below an objective standard of reasonableness under prevailing professional norms." *Saunders*, 165 F.3d at 250. Petitioner therefore has failed to satisfy the first prong under *Strickland*, and his ineffective assistance of counsel claim on this basis must be rejected.

>    vi.   *"Trial counsel failed to adequately investigate the criminal background of the government's key witness, Earl Wynn, depriving defendant of crucial impeachment material"*

As stated above, Counsel avers that he was provided with a criminal history about Mr. Wynn and that he specifically used that criminal history to impeach Mr. Wynn's credibility on cross-examination. (Markowitz Decl. ¶ 8d.) Thus, the Court has no basis upon which to conclude that Counsel "failed to adequately investigate" this issue, and can therefore not grant Petitioner's motion on this basis.

>    vii.  *"Trial counsel failed to determine whether defendant was competent to stand trial"*

Counsel avers that in advance of trial, he retained Dr. Joel Bennett Glass, a psychiatrist from Cherry Hill, New Jersey, to evaluate Petitioner. (*Id.* ¶ 8e.) Dr. Glass told counsel that Petitioner was competent to stand trial. (*Id.*; *see also* Resp't's Opp'n, Ex. K (Letter from counsel to Petitioner regarding Dr. Glass containing the sentence, "As you'll [Petitioner] recall, Dr. Glass stated that you were competent to stand trial.").)

Petitioner does not dispute this declaration. Thus, he has failed to establish any evidence of ineffective assistance of counsel that would support his motion.

9

> *viii. "Trial counsel failed to timely lodge objections to the improper admission of evidence which violated the federal rules of evidence"*

At no point in his moving papers, or in his response, does Petitioner point to an example of his attorney failing to object to the admission of evidence offered by the government. In fact, it is clear that Petitioner's counsel objected to admission of certain evidence admitted under Federal Rule of Evidence 404(b). (*See* Resp't's Opp'n, Ex. P (Transcript of trial court's resolution of Government's application to admit certain evidence over the objection of Petitioner's counsel).)

Without any further clarification from Petitioner, and with clear evidence from the records demonstrating counsel's timely objection to the admission of certain evidence, the Court has no basis to entertain an ineffective assistance of counsel claim on this basis.

> *ix. "Trial counsel failed to prepare a susceptibility/inducement defense for trial or to raise such as a factor in mitigation at sentencing, or to retain an expert for this purpose"*

Petitioner's response brief does not explain what evidence he believes his counsel should have offered in support of a susceptibility/inducement defense for trial. Thus, the Court is at a loss to understand how counsel's failure to do fell outside the "wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. Thus, Petitioner has failed to satisfy the first prong of *Strickland*, and his ineffective assistance of counsel claim on this basis must be rejected.

> *x. "Trial counsel failed to prepare proposed jury instructions on defendant's behalf, inter alia, a drug-addicted witness instruction for the testimony of government witness Vanessa Morton"*

Counsel avers that "[p]rior to the conclusion of the trial, [he] reviewed the proposed jury instructions carefully, considered each of them, and considered and proposed additional instructions or alternatives." (Markowitz Decl. ¶ 8h.) The Court is convinced from this

10

declaration that counsel, in his consideration of the jury instructions, made "a thorough investigation of law and facts" about his plausible options for objecting to certain instructions and proposing the inclusion of others. *See Weatherwax*, 77 F.3d at 1432. Thus, his strategic decision not to prepare a "drug-addicted witness instruction" or any other instruction cannot serve as the basis for a viable ineffective assistance of counsel claim. *See id.* Thus, Petitioner's motion cannot succeed on this basis.

> xi. *"Trial counsel failed to object to the admission of cumulative 404(b) evidence"*

As is the case in Part III.A.*viii*, above, Petitioner does not explain what evidence he feels was admitted in error. At any rate, the trial record is clear that Petitioner's counsel did in fact oppose the government's attempt to admit certain evidence under Federal Rule of Evidence 404(b) on the basis that "an abundance of [similar] evidence exist[ed]" and was therefore cumulative. (Resp't's Opp'n, Ex. P.); *see also United States v. Melton*, 131 F. App'x 21, 23-24 (3d Cir. 2005) (affirming trial court's admission of this evidence).

For these reasons, the Court has no basis to conclude that counsel ever failed to object to the admission of certain 404(b) evidence, and therefore finds no basis to conclude that his conduct fell below any "objective standard of reasonableness under prevailing professional norms." *See Strickland*, 466 U.S. at 688.

> xii. *"Trial counsel failed to pursue a motion seeking the identity of a confidential informant who provided information which was included in the wiretap affidavit after initially pursuing same"*

As with many other "supporting facts" advanced by Petitioner in the instant motion, this assertion is flatly contradicted by the available record. Counsel did in fact prepare such a motion and presented it to the trial court. (Markowitz Decl., ¶ 8i; Resp't's Opp'n, Ex. P (Pretrial

proceedings in this matter containing the statement by the court, "[t]here was also a motion to compel the government to disclose the identity of informants.").)

Counsel admits that he made the decision to withdraw the motion, presumably for certain strategic reasons, and reserved the right to renew the motion at the close of the Government's case. (Markowitz Decl., ¶ 8i.) In exercise of his professional judgment, however, he did not choose to do so. (*Id.*)

As an initial matter, the Court is not at all convinced that this exercise of counsel's judgment fell outside "the wide range of reasonable professional assistance," and Petitioner has made no attempt to argue otherwise. *See Strickland*, 466 U.S. at 689. Second, it finds that Petitioner has failed to demonstrate a reasonable probability that, had his counsel followed through with such a motion, the result of his trial would have been any different. *See id.*, 466 U.S. at 694. Thus, Petitioner's motion cannot succeed on this basis.

> *xiii.* *"Trial counsel failed to develop a trial strategy and proceeded to defend defendant without one"*

The meritless nature of this bald assertion can perhaps be best understood through the following paragraph taken directly from Petitioner's response brief:

> Defense counsel, Mr. Markowitz, focused his energy on attacking the credibility of cooperating coconspirators. [citation omitted]. He assured the jury the evidence would reveal each of these cooperating witnesses were concerned about reducing their sentences, and because [Petitioner] decided to proceed to trial, he was the only person left from neighborhood to testify against. . . . Markowitz further assured the jury [that the purely social] aspect of Wynn and [Petitioner's] relationship would be reflected in the tape recordings . . . . Lastly, Markowitz promised the jury that evidence of wynn defrauding his own girlfriend in order to purchase a white Lexus would be presented and would reflect that Wynn was bent on doing whatever he needed to do to get what he wanted.

(Pet'r's Resp. to Opp'n 4-5.) The Court cannot understand this description of counsel's opening statement as anything other than a summary of his trial strategy. Instead, it appears from reading Petitioner's submission that he is now simply dissatisfied with the *merits* (or perhaps the *efficacy*) of counsel's trial strategy. Thus, Petitioner cannot satisfy the first prong of *Strickland*, because he is unable to argue that the choice to advance this strategy at trial to the exclusion of others "fell below an objective standard of reasonableness under prevailing professional norms." *See Saunders*, 165 F.3d at 250. Petitioner's ineffective assistance of counsel claim therefore cannot proceed on this basis.

> xiv. *"Trial counsel failed to effectively cross-examine government witnesses and/or to make effective use of government witnesses' prior inconsistent statements at trial"*

On his cross examination of one of the government's witnesses, Earl Wynn, Counsel for Petitioner's codefendant questioned the witness extensively about his criminal history. (Resp't's Opp'n, Ex. I.) Mr. Markowitz himself alludes to using certain information he received about Mr. Wynn's criminal history at his own cross-examination of this witness. (Markowitz Decl. ¶ 8d.)

Petitioner's Response Brief seems to contend that his counsel should have introduced wiretap conversations that would have revealed inconsistencies in Mr. Wynn's and other witness's statements. As explained above, however, because Mr. Markowitz made the decision not to play these tapes after having listened to them, his strategic choices on this issue are not a proper subject for challenge. *See Weatherwax*, 77 F.3d at 1432. Accordingly, there is no showing that counsel failed to adhere to the "wide range of reasonable professional assistance" in representing Petitioner. *See Strickland*, 466 U.S. at 689. Further, the Court finds no "reasonable probability" that, had counsel played the tape-recorded conversations in question, the jury would

have come to a different conclusion than it did as to Petitioner's guilt.[3] *See id.* at 694. Thus, this claim fails to satisfy either prong of the *Strickland* test.

> xv. *"Trial counsel failed to adequately consult with defendant prior to trial in the preparation of a trial defense and pretrial motion, or to adequately consult with defendant after trial in the preparation of post-trial motions and for sentencing"*

Counsel avers that he visited and consulted with Petitioner over twenty-five times between the date of Petitioner's arrest in June 2000 and his trial in October 2001. (Markowitz Decl. ¶ 6.) He also states that "[i]n the months and weeks leading up to trial, [he] had numerous discussion with [Petitioner] about the overall defense strategy at trial . . ., [including] the possibility of his testifying in his own defense." (*Id.* ¶ 8j.)

Petitioner responds in conclusory fashion that counsel's "failure to confer" with him caused him prejudice. (Pet'r's Resp. to Opp'n 26.) He also attached prison visitors log. This log lists the visits counsel made to see Petitioner. Although some entries are redacted, the log confirms that counsel visited Petitioner at least thirteen times between January 29, 2001 and March 5, 2002. This is not inconsistent with counsel's estimate of twenty five visits between June 2000 and October 2001.

---

[3] The Court reaches this conclusion in part because the probative value of the tape-recorded conversation is so limited. For instance, Petitioner disputes the contention, established by multiple witnesses at trial, that he and Mr. Wynn had "cloned" pagers, meaning that calling one phone number would cause both his and Mr. Wynn's pagers to activate at the same time.

Petitioner, in his review of certain tapes, directs the Court's attention to a recorded phone conversation between Mr. Wynn and another individual involved in the conspiracy, Alonzo Forrest. Mr. Forrest asks Mr. Wynn where to find Petitioner. (Pet'r's Resp. to Opp'n 12.) Wynn replied that he "did not know because he had the pager in his car." (*Id.*) From this, Petitioner opines "If Melton and Wynn had separate pagers with the same page number, why did Wynn not simply give Alonzo the pager number." He then concludes that this testimony "undermines the theory that Alonzo and Melton were partners who together managed the Fourth and York set for Wynn." (*Id.* at 13.)

This is the type of rank speculation, assuming that the jury would have engaged in a number of increasingly attenuated inferences in spite of probative corroborated evidence to the contrary, that is wholly insufficient to give rise to a "reasonable probability" that, had counsel taken an alternative course of action, the result of Petitioner's criminal trial would have been different. *Strickland*, 466 U.S. at 694.

Looking at these circumstances, the Court finds that Petitioner has failed to demonstrate that counsel's conduct in making visits to discuss trial strategy failed to accord with any "objective standard of reasonableness under prevailing professional norms." *See Saunders*, 165 F.3d at 250. Thus, he has failed to establish the first prong of the *Strickland* test, and his ineffective assistance of counsel claim must be rejected on this basis.

> *xvi.* *"Trial counsel failed to develop a comprehensive strategy and/or mitigation strategy for defendant's sentencing in 2002 or his resentencing in 2005"*

Although Respondent does not respond specifically to this claim, Petitioner provides few details about what mitigating factors he would have wanted his counsel to advance on his behalf before either sentencing court, or what "comprehensive strategy" he had in mind that would have produced a different result.[4] He does say that the sentencing Court failed to give adequate consideration to "defendant's susceptibility to inducement as a mitigating factor." (Pet'r's Mot. 9A.) But this complaint is certainly with the sentencing court's conduct, and as such does not serve to support his ineffective assistance of counsel argument. Without anything else, this alleged inaction by counsel fails both prongs of the *Strickland* test, and thus his ineffective assistance of counsel claim underlying the instant motion cannot be sustained on this basis.

> *xvii.* *"Trial counsel failed to challenge the authenticity of the government's wiretap recordings or to seek a* Starks *hearing contesting their authenticity"*

Counsel avers that after listening to the wiretap recordings, he "did not consider [their] audibility or authenticity . . . to be an issue . . . because, in [his] opinion, the recordings were clear and audible." (Markowitz Decl. ¶ 8b.) Thus, he did not believe he could make a "colorable attack" as to the tapes' authenticity or accuracy which would warrant a hearing under *United States v. Starks*. *See* 515 F.2d 112, 122 (3d Cir. 1975). Petitioner responds that after reviewing

---
[4] To the extent he takes issue with the evidence relied upon to determine the proper drug quantity involved in the charged conspiracy, those arguments are rejected for the reasons stated in Part III.A.*xviii*.

15

the tapes, he discovered that the same conversation was apparently recorded on two different cassettes that were intercepted on two different days. (Pet'r's Resp. to Opp'n 23-24.) From this circumstance, Petitioner argues that counsel should have sought a *Starks* hearing. (*Id.* (citing *Starks*, 515 F.2d at 122) (noting that a relevant factor in a defendant's questioning the authenticity of a proffered tape recording is whether there are "several versions or copies of the tape of varying degrees of intelligibility").)

The Court rejects this argument. It finds that, because counsel listened to the "audio recordings of the wiretap calls that were pertinent to the Government's case," he conducted a sufficiently "thorough investigation of law and facts" about his plausible options, and accordingly his strategic choice not to seek a *Starks* hearing is "virtually unchallengeable." *Weatherwax*, 77 F.3d at 1432. Further, the Court notes that Petitioner does not ever claim that the twice-recorded conversation in question (in which he was a participant) is *actually* inauthentic or inaccurate. Instead, it would appear that he simply would have preferred his attorney seek a *Starks* hearing perhaps as a stalling tactic or to create extra work for the Government. Whatever his reasons, Petitioner has failed to show that there would have been any basis to exclude this conversation, and thus cannot show any prejudice from his lawyer's decision not to challenge its admission as evidence. *See Strickland*, 466 U.S. at 694.

> xviii. *"Trial counsel failed to adequately object to guidelines calculations in the pre-sentence investigation report"*

As explained above, the record clearly shows that counsel objected to certain paragraphs in the pre-sentence investigation report at Petitioner's first sentencing that pertained to the amount of crack cocaine and cocaine with which Petitioner was found to be associated. (Resp't's Opp'n, Ex. G.) These amounts were integral to the "guidelines calculations" that

resulted in Petitioner's sentence. Thus, the Court is at a loss to understand how counsel failed adequately to assert such objections.

Petitioner responds by claiming that counsel "failed to argue that the drug type and drug quantity was never determined by the jury," and that counsel failed to challenge the accuracy of the information relied on by the probation officer" in formulating the pre-sentence investigation report. (Pet'r's Resp. to Opp'n 31.) He further states that counsel should have addressed at the resentencing hearing the inconsistencies at trial about the amount of controlled substances that were involved in the conspiracy. (*Id.*) Specifically, he argues counsel should have requested an evidentiary hearing on this issue. (*Id.* at 32.)

Petitioner's claim fails primarily because he cannot show that he suffered any prejudice as a result of counsel's alleged failures. *See Strickland*, 466 U.S. at 694. Simply stated, both the trial judge at the first sentencing and this Court at resentencing found the evidence overwhelming to support the findings made in the paragraphs in question in the presentence investigation report. Thus, Petitioner cannot explain what argument his counsel failed to make that would have had any effect on the overwhelming evidence that was before either sentencing judge. As such his claim must be dismissed.

## B. Ineffective Assistance of Appellate Counsel

i. *"Appellate counsel failed to raise the most optimal issues available on appeal; and counsel's appellate brief merely recited sections of counsel's submissions before the district court"*

Counsel avers that "in preparation for the appeal, [he] reviewed the transcripts from the suppression hearing, trial, and sentencing hearing. In addition, [he] considered the various memoranda filed in connection with the pretrial motions and sentencing hearing." (Markowitz Decl. ¶ 9.)

Petitioner's claim here is in essence a disagreement with counsel's strategic choices. The Court accepts counsel's representation about the efforts he made in preparing his appeal, and finds them under the circumstances to constitute a "thorough investigation of law and facts" about his plausible options. *See Weatherwax*, 77 F.3d at 1432. Accordingly, the Court finds that his strategic choices on appeal are "virtually unchallengeable," and cannot provide the basis for a viable ineffective assistance of counsel claim. *See id.*

ii. *"Appellate counsel failed to consult or involve defendant in the preparation of his direct appeal"*

The Court agrees with Respondent that because the subject of Petitioner's appeal involved purely legal issues, Petitioner has not shown how the failure to consult or involve him in the preparation of his direct appeal resulted in any prejudice. That is, Petitioner has not explained what he would have done to change the substance of the appeal, either with respect to specific arguments he would have made or to additional bases for appeal. As such he has failed to satisfy the second prong of the *Strickland* test, and thus his motion cannot be granted on this basis.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion is DENIED. The Court will issue an appropriate order.


Dated: 12/19/2013                                      /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge